UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ELEVANCE HEALTH, INC.,               )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        No. 1:23-cv-01497-SEB-MJD
                                     )
VINOD MOHAN,                         )
                                     )
                Defendant.           )

## ORDER

On August 22, 2023, Plaintiff Elevance Health, Inc. ("Elevance") filed this diversity action against its former employee, Defendant Vinod Mohan ("Ms. Mohan"), alleging that Ms. Mohan misappropriated trade secrets. Dkt. 1. Elevance also filed a Motion for a Temporary Restraining Order ("TRO"), requesting that we enjoin Ms. Mohan from starting her new position with its competitor, Molina Healthcare, Inc. ("Molina"). Dkt. 7. On August 30, 2023, Ms. Mohan filed a Motion to Dismiss for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), respectively. Dkt. 22. Alternatively, Ms. Mohan asks us to transfer this action to the Central District of California, pursuant to 28 U.S.C. 1404(a). The Court, mindful of the need to resolve these pending issues expeditiously, now **DENIES** Defendant's Motion to Dismiss and **DENIES** Plaintiff's Motion for Temporary Restraining Order.

1

## FACTS[1]

### I.     The Parties

Elevance, one of the nation's leading healthcare benefit companies, is an Indiana corporation with its principal place of business in Indiana. As an independent licensee of Blue Cross Blue Shield Association ("BCBS"), it serves approximately forty million medical members through its affiliated health plans across the United States. Elevance maintains its success through a strategic structuring and implementation of its distribution, provider networks, portfolio of member benefit plans, and substantial investments in operational improvement—all of which are driven by information that Elevance (and its competitors) regard as highly confidential. Consequently, Elevance protects its confidential information from public dissemination by storing it in secure computer systems and password-protected databases. Further, only specific user profiles can access certain folders of confidential information, and these select few Elevance personnel are required to execute confidentiality agreements.

From September 2020 to July 2023, Ms. Mohan worked for Elevance as President, Medicare West Region, responsible for Medicare-related business in Arizona, California, Colorado, New Mexico, Nevada, Texas, Washington, and Florida. In that position, Ms. Mohan oversaw that division of Elevance's strategy, financial performance, and operational

---

[1] Unlike a motion to dismiss filed pursuant to Rule 12(b)(6), Ms. Mohan's motion seeks dismissal for lack of personal jurisdiction, and, thus, allows her to proffer affidavits and other documents outside the pleadings which the Court may consider in ruling on her motion. *FinishMaster, Inc. v. Walker*, No. 1:16-CV-02302-SEB-DML, 2017 WL 7370984, at *1 n.1 (S.D. Ind. Sept. 19, 2017) (J., Barker).

execution of its Medicare business. As a senior executive, she had comprehensive access to a "significant amount" of highly confidential and proprietary information. Throughout her employment, Ms. Mohan primarily worked out of her home office in California, where she regularly printed documents containing aspects of Elevance's confidential information to which her position granted her access. During her tenure, she traveled to Elevance's Indianapolis headquarters on three occasions to attend in-person meetings to discuss matters related to Elevance's bid planning and Medicare planning, which Elevance characterizes as involving "confidential and trade secret information key to maintaining its competitive advantage." Dkt. 24 at 5.

## II.    Ms. Mohan's Employment Agreement

When Ms. Mohan joined Elevance in September 2020, she "reviewed and negotiated," dkt. 23 at 4, the terms of an Employment Agreement ("Employment Agreement"), wherein she expressly acknowledged that, by virtue of her employment with Elevance, she would have access to confidential information. The Employment Agreement provided further that this confidential information "constitutes trade secrets and confidential and proprietary business information" that was considered Elevance's "exclusive property." Dkt. 1-6 at 4. Under the Employment Agreement, Ms. Mohan also agreed not to:

> (A) use Confidential Information for the benefit of any person or entity other than the Company or its affiliates; (B) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information, except as required to perform the Participant's duties for the Company or its affiliates; or (C) while employed and thereafter, publish, release, disclose or deliver or otherwise make available to any third party any Confidential Information by any communication, including oral,

3

> documentary, electronic or magnetic information transmittal device or media.

*Id.* at 4–5.

The Employment Agreement also contained a forum selection clause, and a consent to personal jurisdiction, which provides in relevant part:

> To the extent that any party wishes to seek such relief from a court, the parties agree to the following with respect to the location of such actions. Such actions brought by the Executive shall be brought in a state or federal court located in Indianapolis, Indiana. Such actions brought by the Company shall be brought in a state or federal court located in Indianapolis, Indiana; the Executive's state of residency; or any other forum in which the Executive is subject to personal jurisdiction. The Executive specifically consent to personal jurisdiction in the State of Indiana for such purposes.

*Id.* at 12 ("Section 17(f)").

Relatedly, the Employment Agreement contained a choice-of-law provision, which provides:

> This Agreement forms part of an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), and shall be governed by and construed in accordance with ERISA and, to the extent applicable and not preempted by ERISA, the law of the State of Indiana applicable to contracts made and to be performed entirely within that State, without regard to its conflicts of law principles.

*Id.* ("Section 18").

## III.   Ms. Mohan's Resignation

On July 17, 2023, at 9:54 a.m. ET, Ms. Mohan texted her supervisor, Elena McFann ("Ms. McFann"), President of Elevance's Government Business Division, requesting that she "let me know when you have a few minutes," to which Ms. McFann replied, "now." During a three-minute ensuing phone call at 9:55 a.m. ET, Ms. Mohan disclosed that she

4

was leaving Elevance and would be joining Molina Health, Inc. ("Molina"), one of Elevance's direct competitors. After Ms. Mohan reported that she had not yet logged onto her computer that day, Ms. McFann advised her to log in and create an out-of-office message directing all inquiries to her assistant, to submit a formal letter of resignation, and then to "step away from the keyboard." Dkt. 1-5 at 3. Ms. McFann also promptly contacted Elevance's technology department and requested that Ms. Mohan's account be disabled. At 10:08 a.m. ET, Ms. Mohan emailed to Elevance Health her notice of resignation, and at 12:05 p.m. ET, Elevance disabled Ms. Mohan's login and network access.

Also on July 17, Molina's Senior Vice President & Deputy General Counsel Eric Alderete ("Mr. Alderete") wrote to Elevance's Chief Legal Counsel Blair Todt ("Mr. Todt") at Ms. Mohan's direction, confirming, *inter alia*, that (1) Ms. Mohan had accepted a position as Senior Vice President of Medicare at Molina; (2) her start date was August 30, 2023; and (3) pursuant to California Labor Code section 925, Ms. Mohan was "exercising her rights . . . to void certain provisions of her Employment Agreement [and] hereby immediately voids Sections 17(f) and (18) of the Agreement." Dkt. 1-15 at 2. Elevance never responded to this letter.

After receiving instructions from Elevance's IT Asset Reclaim Team on July 21, 2023, Ms. Mohan promptly mailed back her work-issued devices, including an iPad, laptop, printer, and phone, on July 22, 2023. When Elevance later examined Ms. Mohan's technology, it discovered that at 10:01 a.m. ET on July 17, 2023, Ms. Mohan "attempted to print a file entitled 'CY2024 Medicare Pass 2 West Region Bid Strategy_041023.pptx'

on her work-at-home printer." Dkt. 1-13 at 2.[2] The content of the file, we are told, was a PowerPoint presentation containing highly confidential proprietary information, data, and trade secrets related to Elevance's Medicare bid strategy for the West Region.

Then, on August 4, 2023, Mr. Alderete again reached out to Mr. Todt, this time explaining that Ms. Mohan held a box of Elevance-related documents in her possession. At Elevance's direction, Mr. Alderete coordinated the shipment of these documents to Elevance's headquarters in Indianapolis, Indiana, where they arrived on August 17, 2023. An accounting of the documents, however, did not recover a copy of the aforementioned attempted print. The uncertainty of whether Ms. Mohan may still retain a copy of the PowerPoint (and the confidential information contained therein) forms the basis of Elevance's conclusion that Ms. Mohan has not been forthcoming in honoring the terms of her Employment Contract.

## IV.    Procedural Background

On August 22, 2023, Elevance filed this lawsuit against Ms. Mohan, alleging counts of (1) breach of contract; (2) violation of the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 *et seq.*; (3) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1823 *et seq.*; (4) breach of fiduciary duty; (5) conversion; (6) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (7) violation of Indiana's Computer Trespass law, Ind. Code § 34-43-2-3. Dkt. 1. On the same day, Elevance moved for a TRO and preliminary injunction to delay Ms. Mohan's first day of work with Molina and prevent the

---

[2] Elevance maintains that this printer remains in Ms. Mohan's possession, so it has been unable to determine whether her attempt was successful.

potential exposure and misappropriation of Elevance's confidential information and trade secrets. Dkt. 7. At a telephonic pretrial conference on August 25, 2023, Ms. Mohan indicated her plans to file a motion to dismiss and agreed to defer her start date with Molina, thereby postponing our ruling on Elevance's TRO. Dkt. 19.

On August 30, 2023, Ms. Mohan moved to dismiss Elevance's claims, arguing a lack of personal jurisdiction and improper venue; alternatively, she asks us to transfer this case to the Central District of California.[3] Dkt. 22. Though we previously held the TRO in abeyance pending resolution of Ms. Mohan's motion to dismiss, she has recently made known her intent to begin work at Molina on September 18, 2023.[4] Thus, we now consider both Ms. Mohan's Motion to Dismiss, dkt. 22, and Elevance's Motion for a TRO and Preliminary Injunction, dkt. 7.

## LEGAL ANALYSIS

Personal jurisdiction is "an essential element" of a district court's power to decide the merits of a case, and, without it, the court is "powerless to proceed to an adjudication." *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937). Accordingly, we first review Ms. Mohan's Motion to Dismiss under Rule 12(b)(2) before turning to her Rule 12(b)(3) motion and the merits of Elevance's TRO. *Genesys Telecommunications Lab'ys, Inc. v. Morales*, No. 1:19-CV-000695-TWP-DML, 2019 WL 5722225, at *5 (S.D. Ind.

---

[3] On September 7, 2023, Ms. Mohan and Molina jointly initiated a separate action in the Central District of California, seeking declaratory and injunctive relief under California law to prohibit Elevance from enforcing certain provisions of Ms. Mohan's Employment Agreement. *Molina Healthcare, Inc. v. Elevance Health, Inc.*, No. 2:23-cv-07417 (C.D. Cal.).

[4] Ms. Mohan delayed her original start date and has been on paid administrative leave since August 30, 2023.

Nov. 5, 2019); *Savis, Inc. v. Cardenas*, No. 18 CV 6521, 2018 WL 5279311, at *4 (N.D. Ill. Oct. 24, 2018).

## I.    Personal Jurisdiction over Ms. Mohan

Federal Rule of Civil Procedure 12(b)(2) requires the dismissal of a claim where jurisdiction over the defendant is lacking. In considering any Rule 12(b) motion, we examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. Dismissal is appropriate only if it appears to a certainty that the plaintiff can establish no basis for personal jurisdiction. We accept as true all well-pleaded factual allegations and rely on affidavits and other documentary evidence that may have been filed so long as any factual disputes are resolved in the non-movant's favor and all reasonable inferences bearing on personal jurisdiction are drawn in the plaintiff's favor. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When ruling on a motion to dismiss "without the benefit of an evidentiary hearing . . . , the plaintiff  'need only make out a *prima facie* case of personal jurisdiction.' " *Id.* (quoting *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)) (italics in original).

Under federal and Indiana law alike, forum selection clauses are generally valid and enforceable.[5] *Carroll v. CMH Homes, Inc.*, No. 4:12-cv-23-SEB-WGH, 2013 WL 960408,

---

[5] When considering the validity of a forum-selection clause in an employment contract that also contains a choice-of-law provision, courts apply the law of the jurisdiction that the parties chose to govern the rest of the contract. *Curtis-Campbell v. Premiere Building Materials, Inc.*, No. 3:19-CV-00063-PPS-MGG, 2019 WL 13229723, at *2 (N.D. Ind. July 23, 2019). Here, the parties chose Indiana law (notwithstanding Indiana's conflict-of-law rules that may provide otherwise), and the factual record gives us no reason to doubt the integrity of that agreement. Ms. Mohan's "subjective belief that the contract she entered into would not be enforceable against her—based on California law, even though the contract specified that Indiana law would apply—is irrelevant." *Biomet 3i, LLC v. Land*, No. 1:16-CV-00125-TLS-SLC, 2017 WL 1483461, at *5 (N.D. Ind. Jan.

at *2 (S.D. Ind. Mar. 12, 2013) (J., Barker) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) and *Kimco Leasing Inc. v. Ransom Jr. High Sch.*, 556 N.E.2d 1371, 1372 (Ind. Ct. App. 1990)). Indiana courts regularly hold "that parties may consent by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction." *Everdry Mktg. & Mgmt., Inc. v. Carter*, 885 N.E.2d 6, 10 (Ind. Ct. App. 2008) (quotation marks and citation omitted). Accordingly, when a forum selection clause is "valid and enforceable, then challenges to personal jurisdiction are waived." *FinishMaster*, 2017 WL 7370984, at *3; *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006) ("[S]ince a defendant is deemed to waive (that is, [s]he forfeits) objections to personal jurisdiction or venue simply by not making them in timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause.").

A party disputing the integrity of a forum selection clause "confronts a steep climb." *Carroll*, 2013 WL 960408, at *3. Forum selection clauses are enforceable if: (1) they are just and reasonable under the circumstances; (2) there is no evidence of fraud or overreaching such that the agreeing party would be deprived of her day in court; and (3) they were freely negotiated. *Grott v. Jim Barna Log Sys.-Midwest, Inc.,* 794 N.E.2d 1098, 1102 (Ind. Ct. App. 2003) (citations omitted).

Ms. Mohan makes no argument that the forum selection clause in her Employment Agreement was unjust or unreasonable, nor does she aver that the contract itself was

---

10, 2017), *report and recommendation adopted*, No. 1:16-CV-125-TLS, 2017 WL 1483469 (N.D. Ind. Feb. 27, 2017). Accordingly, we apply Indiana law to our analysis.

procured by fraud or overreaching or that it was not freely negotiated. (Indeed, she tells us that she "reviewed and negotiated the terms" of her employment. Dkt. 23 at 4.) Rather, Ms. Mohan objects to this Court's jurisdiction by invoking California Labor Code § 925, which prohibits employers from requiring "an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a)(1) (West 2017). She contends that, pursuant to her rights under Section 925, she expressly voided the forum selection and choice-of-law provisions in letter that Mr. Alderete sent to Mr. Todt on July 17, 2023. Consequently, her argument continues, the forum selection clause and choice-of-law provisions are no longer valid nor relevant to the personal jurisdiction inquiry.

Overlooked in Ms. Mohan's argument, however, is that California law does not apply here, and she points to no evidence suggesting that the forum-selection clause is otherwise unenforceable under Indiana law. It is altogether reasonable that Ms. Mohan's Indiana-based employer would select its home state as its judicial forum, and there is no evidence in the record before us that Elevance committed any fraud or overreaching during the negotiation of the Employment Agreement, such that Ms. Mohan would be deprived of her day in court. Moreover, these are the terms of employment that Ms. Mohan reviewed and accepted. Therefore, we conclude that the Indiana forum selection clause is valid and enforceable, and "the forum selection clause[ ] support[s] personal jurisdiction in this Court." *Genesys Telecommunications Lab'ys, Inc*, 2019 WL 5722225, at *8.

## II.     Venue

In reviewing a Rule 12(b)(3) motion to dismiss for improper venue, we again accept Elevance's allegations as true, resolving factual disputes in Elevance's favor. *Carroll*, 2013 WL 960408, at *2. Under 28 U.S.C. § 1391(b), venue is proper in any judicial district: (1) where any defendant resides; (2) in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if no district in which an action may be brought under this section, where any defendant is subject to the court's personal jurisdiction. Despite this general rule, a potential defendant nonetheless may waive venue objections by contractual consent, such as through a forum selection clause. *IFC Credit Corp.*, 437 F.3d at 610; *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 924 (N.D. Ill. 2017) ("Forum selection clauses generally constitute implied waivers of objections to both personal jurisdiction and venue in the selected forum.") (collecting cases). As explained above, the forum selection clause of Ms. Mohan's Employment Agreement is valid and enforceable. Accordingly, Ms. Mohan has waived any objection to improper venue.

## III.     Transfer to the Central District of California

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses [and] in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Insofar as we rejected Ms. Mohan's arguments under Rules 12(b)(2) and (b)(3), she asks us to invoke our authority under section 1404 to transfer this case to the Central District of California. Transfer is appropriate only "when the moving party establishes that (1) venue is proper in the transferor district; (2) venue and jurisdiction

11

are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016). The movant must show, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

Ordinarily, courts evaluating a motion to transfer under § 1404 "must evaluate both the convenience of the parties and various public-interest considerations . . . [to] decide whether, on balance, a transfer" is appropriate. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Texas*, 571 U.S. 49, 63 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.' " *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In those instances, the interest of justice is best served by enforcing valid forum selection clauses and protecting parties' legitimate expectations. *Id.* In that respect, "a valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal alterations and citations omitted); *see also Deans v. Tutor Time Child Care Systems, Inc.*, 982 F. Supp. 1330, 1331 (S.D. Ind. 1997) (forum selection clause controls venue unless movant makes "strong showing" to set it aside) (J., Barker). Once a party agrees to a forum selection clause, "[a] court must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. In other words, only the public-interest factors are relevant when the parties have agreed to a forum selection clause. *Id.*

12

The relevant public interest factors include administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. *Id.* at 62 n.6. But "[b]ecause th[e]se factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual circumstances." *Id.* at 64.

Ms. Mohan's principal argument is that transfer to the Central District of California would alleviate the congestion of cases in our district and result in a speedier trial. She cites a number of statistics indicating that the California district court operates with more judges and less cases per judge. While docket congestion may lean toward transfer, the remaining public interest considerations—most importantly paired with a valid forum selection clause—lead us to conclude that transfer is not merited. Indiana has a strong interest in vindicating the rights of one of its largest employers. Other than two counts, Elevance's remaining claims arise under Indiana law. Thus, this forum is "at home with the law." *Id.* at 62 n.6. At the risk of being self-serving, while conceding that the demands of our heavy docket do impact this court's ability to provide expeditious rulings on occasion, we point out that the Court's management of this case provides an example of judicial diligence and effective docket management when circumstances require such. Therefore, court congestion alone simply does not always justify transfer, and it does not in these circumstances.

## IV.    Temporary Restraining Order

A plaintiff seeking a TRO must establish "(1) that [it] is likely to succeed on the merits; and (2) traditional legal remedies would be inadequate, such that [it] would suffer … irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) (internal citations omitted). If the moving party fails to establish either prerequisite, the Court's "inquiry is over and the injunction must be denied." *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Alternatively, if the plaintiff establishes the first two elements, the Court must also find "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021).

In assessing whether Elevance has met its burden to secure a TRO, we view "the available evidence in the record from a neutral and objective viewpoint without accepting [Elevance's] allegations as true nor drawing all reasonable inferences in its favor." *Aon PLC v. Alliant Ins. Servs., Inc.*, No. 23-CV-03044, 2023 WL 3914886, at *2 (N.D. Ill. June 9, 2023) (internal quotations and alterations omitted). Because Elevance has failed to demonstrate either a likelihood of success on the merits or irreparable injury, we deny its request for a TRO.

To establish a likelihood of success on the merits, "an applicant for preliminary relief bears a significant burden." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). While the applicant need not proffer proof by a preponderance of the evidence, neither "a mere possibility" nor "a better than negligible chance" is enough. *Aon*

*PLC*, 2023 WL 3914886, at *2 (citing *Pritzker*, 973 F.3d at 762) (internal quotations and alterations omitted).

Elevance argues that Ms. Mohan misappropriated its trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839, and the Indiana Uniform Trade Secrets Act ("IUTSA"), Ind. Code. § 24-2-3-1 *et seq*. The elements of misappropriation claims under both the DTSA and the IUTSA are similar, and Elevance does not make separate arguments for either. Accordingly, we consider the likelihood of success on the merits of the two claims combined. *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792, 806 (N.D. Ind. 2020). The success of a misappropriations claim requires a showing that (1) a trade secret existed; (2) it was misappropriated through improper acquisition, disclosure, or use; and (3) the misappropriation damaged the trade secret's owner. *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F.Supp.3d 843, 848 (N.D. Ill. 2019).

On the record before us, Elevance has not shown beyond a mere possibility that Ms. Mohan improperly acquired, disclosed, or used Elevance's trade secrets. At best, Elevance has shown that, within minutes after resigning and "being instructed to step away from her keyboard," Ms. Mohan attempted to print one document containing confidential information and trade secrets, which document was not among those she returned to Elevance following her resignation. Dkt. 8 at 17. However, Ms. Mohan has attested that she does not possess any digital or printed copy of the missing document, and Elevance has failed to adduce any contrary evidence from which the Court could conclude that, even

if Ms. Mohan's attempt to print were successful, any such document remains in her possession or that she disclosed the document to her new employer, Molina.

Elevance also references the fact that, because Ms. Mohan worked remotely and printed "hundreds" of documents from her home office during the course of her employment, "it appears that" she must have additional documents containing confidential information and trade secrets in her possession, but that averment is no more than speculation. There is no allegation that Ms. Mohan was acting without authorization or a legitimate business purpose or otherwise nefariously when she printed documents in the normal course of business while employed by Elevance—in fact, Elevance concedes that such printing was within the scope of her role as a senior executive—nor is there any evidence that these documents remain in her possession today or have been or will be disclosed to Molina.

Based on these facts, even assuming that Ms. Mohan did improperly print a document containing confidential information following her resignation, there is insufficient evidence to establish that she continues to illicitly possess Elevance's confidential and trade secret information or that she has shared or intends to share such information with Molina. To establish an entitlement to injunctive relief, it is not enough to show that a past wrong may have been committed; rather "a future threat of irreparable harm must exist to warrant injunctive relief." *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022). Ms. Mohan is, of course, still bound by the confidentiality clauses in her employment agreement with Elevance, but given the absence of a non-compete clause in that agreement, Ms. Mohan is certainly permitted to use the general knowledge and skills

16

she acquired through experience to compete in the marketplace against her former employer. *See LigTel Commc'ns, Inc.*, 455 F.Supp.3d at 808 (mere allegations that former employee possesses proprietary information is insufficient to plausibly suggest actual disclosure or use of trade secrets).[6]

Without sufficient evidence of actual misappropriation, Elevance's theory of entitlement to relief is therefore "one of 'inevitable disclosure.' " *Admiin Inc. v. Kohan*, No. 23-CV-04430, 2023 WL 4625897, at *10 (N.D. Ill. July 19, 2023). Under the inevitable disclosure theory, courts evaluate three factors: "(1) the level of competition between the former and new employer; (2) the similarity between the employee's former and new positions; and (3) the actions the new employer has taken to prevent the use or disclosure of the former employer's trade secrets." *Packaging Corporation of America, Inc. v. Croner*, 419 F.Supp.3d 1059, 1070 (N.D. Ill. 2020). But because broad application of this theory would effectively bar employees from ever leaving their jobs to take similar positions with competitive entities, courts are generally reticent to issue injunctions on these grounds. *Kohan*, 2023 WL 4625897, at *10.

Without the benefit of a full evidentiary record before us, we cannot conclude that each of these factors supports a TRO. On the one hand, Molina is indisputably one of Elevance's direct competitors, and Ms. Mohan has accepted a position similar to her former

---

[6] To the extent that Elevance's claims rest on breach-of-contract principles, it is well established that "[t]he award of damages is the common form of relief for breach of contract," *U.S. v. Winstar Corp.*, 518 U.S. 839, 886 n.30 (1996) (quoting 3 E. Farnsworth, Contracts 12.8, p. 185 (1990)), and the availability of an adequate remedy at law, such as monetary damages, renders injunctive relief inappropriate. *See N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306 (1984).

position with Elevance. However (and most significantly), Molina has taken steps to prevent the disclosure and use of Elevance's trade secrets. Given that both Molina and Ms. Mohan have been forthcoming about returning Elevance's property, we view the inevitable disclosure of Elevance's confidential information as improbable. For instance, Molina contacted Elevance on the same day as Ms. Mohan's resignation to confirm that Ms. Mohan had accepted a similar position with Molina. When Ms. Mohan later informed her new employer that she had an assortment of Elevance-related documents, Molina instructed her to sequester those materials, and Molina reached out to Elevance for further instructions. Despite Elevance's allegations to the contrary, Ms. Mohan and Molina have made efforts at every step to keep this transition above board. Ms. Mohan's and Molina's conduct "is in sharp contrast to cases where ex-employees have downloaded or accessed trade secrets or confidential information from their ex-employer, and the ex-employer has proof." *Kohan*, 2023 WL 4625897, at *12. Therefore, Elevance's speculation that Ms. Mohan may, at some unidentified point in the future, use trade secrets is insufficient to establish the imminent, irreparable harm, absent an injunction, required to justify the extraordinary relief of an emergency TRO.

## CONCLUSION

For the reasons explained above, the Court hereby **DENIES** Defendant's Motion to Dismiss or to Transfer, dkt. 22, and **DENIES** Plaintiff's Motion for a Temporary Restraining Order, dkt. 7.

IT IS SO ORDERED.


Date:

_____9/15/2023_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Darren Andrew Craig
Frost Brown Todd LLP
dcraig@fbtlaw.com

Jeanne A. Fugate
King & Spalding
jfugate@kslaw.com

Gregory W. Guevara
gguevara@boselaw.com

Kandi Kilkelly Hidde
Frost Brown Todd LLP
khidde@fbtlaw.com

Patricia Roman Hass
Frost Brown Todd LLP
promanhass@fbtlaw.com

19

Quyen L. Ta
King & Spalding LLP
qta@kslaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pzimmerly@boselaw.com